UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Jorge Luis Ramirez Lopez, | Case No. 2:24-cv-01595-CDS-BNW |
| Plaintiff | **Order Denying Plaintiffs' Motion for Summary Judgment and Granting Defendants' Cross-Motion for Summary Judgment** |
| v. | |
| Clyde A. Moore, et al., | |
| Defendants | [ECF Nos. 15, 24] |

This case arises from the USCIS's denial of plaintiff Jorge Luis Ramirez Lopez's I-260 petition and I-485 application. Lopez moves for summary judgment on his claims under the Administrative Procedure Act (APA) and the Fifth Amendment's Due Process Clause. He argues that the USCIS's denial was arbitrary and capricious because it ignored and misinterpreted evidence of his bona fide marriage. *See* Mot. summ. j., ECF No. 15. He also argues that the USCIS violated his due process rights by failing to notify him of all the reasons the government intended to deny his petition. *Id.* at 25.

The USCIS filed an opposition to Lopez's motion, arguing that USCIS reasonably concluded that Lopez failed to meet his burden of proving that he had a bona fide marriage. Opp'n, ECF No. 22. They also filed a cross-motion for summary judgment on Lopez's Due Process claim, asserting that the notice of intent to deny (NOID) and dual hearings provided Lopez with sufficient due process. Cross-mot., ECF No. 24.

I.  **Background**

In September 2015, Lopez immigrated to the United States. A.R., ECF No. 14-1 at 126. In 2016, Lopez met Polette Hernandez, an American citizen. *Id.* In March 2017, the pair allegedly wed. ECF No. 15 at 4. Two months later, Hernandez died from health complications during a surgery in Tijuana, Mexico. ECF No. 14-1 at 127.

In May 2019, Lopez concurrently filed a Form I-260 petition and a Form I-485 application. *Id.* at 102–19. To supplement his petition, Lopez submitted Hernandez's birth certificate, the couple's marriage certificate, Lopez's sworn declaration, six photos of the couple, and five handwritten letters from friends. *Id.* at 12–42. In January 2020, an immigration services officer in Las Vegas interviewed Lopez but was unable to decide on his petition. *See id.* at 14–18. In November 2020, Lopez was interviewed again, yet a decision on his petition was still not made. *Id.*

In December 2020, a field officer director for the USCIS issued Lopez a Notice of Intent to Deny Petition for Relative (NOID). ECF No. 14-1 at 14–18. The NOID stated that Lopez had failed to meet his burden of showing a bona fide marriage, and it detailed the bases for reaching that conclusion. *Id.* It also stated that Lopez could "rebut the aforementioned information and to submit any additional evidence in support of [his] visa petition" within thirty days. *Id.* at 18. Lopez responded to the NOID in March 2021 by submitting another personal statement, social media messages from Hernandez's mother, and two statements from purported friends of Hernandez. *See id.* at 5, 8, 54–56, 61–63, 71–80.

In May 2021, a USCIS field officer director denied Lopez's petition. *See id.* at 21. In 2022, Lopez appealed that decision to the Board of Immigration Appeals. *Id.* at 33. In 2023, the director's decision was affirmed.[1] In 2024, Lopez initiated the present action with this court. *See* Compl., ECF No. 1.

---

[1] The immigration judge's ruling stated, in part,

> Counsel's statement that there is no significant evidence that the couple did not intend to establish a life together suggests a fundamental misunderstanding of the burden of proof in this matter. The Director is not required to disprove the validity of the self-petitioner's marriage. Rather, when the validity of a marriage is called into question, it is the self-petitioner's responsibility to resolve any ambiguities in the record with independent, objective evidence and establish that the marriage was not entered into for the primary purpose of evading the immigration laws.
> We agree with the Director's conclusion that the evidence submitted, including in response to the NOID, is insufficient to meet the burden of proof.

ECF No. 14-1 at 22.

2

## II. Legal standard

Traditionally, summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). But in the APA context, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985). If a "district court is reviewing a decision of an administrative agency which is itself the finder of fact," then the district court's role "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* at 769–70.

An "underlying agency action may be set aside only if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Family Inc. v. U.S. Citizenship & Immigr. Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006) (quoting 5 U.S.C. § 706(2)(A)). Courts review an agency's factual findings for "substantial evidence," meaning that they "will not disturb the agency's findings under this deferential standard 'unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result.'" *Id.* (quotation omitted).

## III. Discussion

Lopez moves for summary judgment on his APA and Fifth Amendment due process claims. ECF No. 15. The defendants filed an opposition and a cross-motion on the due process claim. ECF No. 24. For the following reasons, I deny Lopez's motion and grant the government's cross-motion.

### A. The defendants' cross-motion for summary judgment on Lopez's Fifth Amendment due process claim is granted.

Lopez contends that the government violated his Fifth Amendment due process rights by failing to apprise him of all the "specific reasons why it intended to deny his petition so that he had a meaningful opportunity to submit rebuttal evidence." ECF No. 15 at 24. Specifically, Lopez

argues that the government failed to inform him that it was relying on the death certificate and not the unnotarized letters from friends. *Id.* at 25. In response, the government asserts that it complied with due process as a matter of law and is thus entitled to summary judgment on Lopez's due process claim. ECF No. 24 at 20–21.

In determining whether a person's due process rights have been violated, courts take on a two-step inquiry. *Zerezghi v. USCIS*, 955 F.3d 802, 808 (9th Cir. 2020). First, they "ask whether there exists a liberty or property interest of which a person has been deprived." *Id* (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). Second, they "ask whether the procedures followed by the government" in depriving the liberty or property interest "were constitutionally sufficient." *Id.* (citation modified). "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). And in the immigration context, federal regulations require the government to communicate its intent to deny a petition and the bases for the proposed denial via a NOID. *See* 8 C.F.R. § 103.2(b)(8)(iv).

Here, there is no dispute that the petitioner was afforded a hearing. Rather, the parties dispute the extent of information the government was required to disclose in the NOID. In arguing that Lopez contends that the NOID failed to comport with due process because it did not disclose all the specific reasons for the petition's denial—namely, the fact that the death certificate said "single" and that the letters from friends were not notarized. Such disclosure, Lopez argues, was required pursuant to *Zerezghi v. USCIS*, 955 F.3d 802 (9th Cir. 2020).[2] *See, e.g.*, ECF No. 27 at 10.

*Zerezghi* held that the Board of Immigration Appeals, in denying the petitioners' I-130 application, "violated due process by relying on undisclosed evidence that [the petitioners] did not have an opportunity to rebut." 955 F.3d at 804. There, the court explained that there was "no

---

[2] Lopez also cites to *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015), and *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992). *See, e.g.*, ECF No. 27 at 10.

dispute over whether [the petitioners'] current marriage [was] bona fide." *Id.* at 805. Rather, the issue was whether the government violated due process in finding "substantial and probative evidence that [the noncitizen spouse's] first marriage to an American citizen was a sham." *Id.* The court ultimately recognized that "the government's use of undisclosed records like the rental application in making a determination of marriage fraud was unconstitutional." *Id.* at 809–10. And it reasoned that the rental document was never given to the petitioners, and the NOID "provided no crucial details . . . other than a vague reference to certain 'records.'" *Id.* at 811.

There are three notable distinctions between *Zerezghi* and the present action. First, the petition in *Zerezghi* was an I-130 petition, not an I-360 petition or I-485 application. Second, the bona fide status of the petitioners' marriage in *Zerezghi* was not in dispute; rather, the dispute concerned the government's burden to find substantial and probative evidence that the noncitizen spouse's prior marriage was fraudulent. Third, unlike the death certificate and letters in this action, the rental document in *Zerezghi* was not disclosed to the petitioner. Thus, Lopez essentially argues that I should expand *Zerezghi*'s ruling to a different type of petition and dispute, while also heightening the NOID disclosure standard. I decline to do so.

The same is true for *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015), and *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992). In *Kerry*, the court held that due process required the government to give "an accounting of the evidence on which it relied"—but not trial-type proceedings—when rejecting a DS-2019 form. 803 F.3d at 1073–74. And in *Barnes*, the court held due process requires that notice to Aid to Families with Dependent Children (AFDC) custodial parents by a state agency that collects child support payments from absent parents must give sufficient information as to the timing and accuracy of "pass-through" distributions. 980 F.2d at 577.

But here, Lopez was given written notice and two interviews related to the petition. That notice set forth the government's intent to deny Lopez's petition and the bases for the denial. These bases did not solely rest on the death certificate and unnotarized letters. And those

5

documents were provided to the government by Lopez; thus, he had access to them and their contents. Further, the government gave Lopez notice as to evidence he could submit to prove he had a bona fide marriage, as well as the opportunity to do so. But he did not submit the suggested proof, so his petition was denied. In sum, the NOID was sufficient; requiring more would effectively shift to the government Lopez's burden of proving that he had bona fide marriage. Thus, the government's motion for summary judgment on Lopez's due process claim is granted.

### B. The petitioner's motion for summary judgment is denied.

As the petitioner, Lopez bears the burden of showing a bona fide marriage "by at least a preponderance of the evidence." *Zerezghi*, 955 F.3d at 804. He also bears the burden "to resolve inconsistencies by independent objective evidence." *Love Korean Church v. Chertoff*, 549 F.3d 749, 754 (9th Cir. 2008) (quotation omitted). "Attempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice." *Id.*

Here, Lopez fails to meet his burden. The administrative record shows that the government considered six photos submitted by Lopez to resolve the discrepancy between Lopez's sworn testimony and statement.[3] ECF No. 14-1 at 3, 7. It also shows that the government explained to Lopez how it found little evidentiary value in the photographs because they did not provide enough context to resolve the discrepancy or show that he had a bona fide marriage. *Id.* at 7. Even after learning of the photographs' deficiency, Lopez did not provide additional photographs. As for the five letters, the government was unable to verify the identities of their authors. One way that this hurdle could have been cleared is if Lopez notarized the letters. But he did not do so. Finally, Hernandez's death certificate he submitted did not show that she and

---

[3] That discrepancy concerns facts related to the wedding. In Lopez's declaration, he said that both friends and family attended the wedding. A.R. 127. But in his sworn testimony, he said that only his friends attended the wedding. *Id.* at 17.

1 Lopez had a bona fide marriage, as it listed Hernandez as "never married" and did not list Lopez as the surviving spouse. *Id.* at 7.

Thus, after reviewing the administrative record, I find the government's decision to deny Lopez's I-360 petition and I-485 application to be rational, supported by the record, and the product of sufficient consideration. I do not find it to be an arbitrary or capricious decision. Therefore, because Lopez failed to show that he is entitled to judgment as a matter of law on his APA claim or his due process claim, I deny Lopez's motion for summary judgment entirely.

## IV. Conclusion

IT IS HEREBY ORDERED that Lopez's motion for summary judgment **[ECF No. 15] is denied.**

IT IS FURTHER ORDERED that the defendants' cross-motion for summary judgment **[ECF No. 24] is granted.**

The Clerk of Court is kindly directed to enter judgment in favor of the defendants, and to the close this case.

Dated: January 12, 2026

_____
Cristina D. Silva
United States District Judge